ROBINSON *v.* TUTTLE *& als.*

37 243
67 562

The widow of every person deceased intestate, leaving no lineal descendant, is entitled, in addition to her dower, to one half the real estate in fee, and one half the personal estate absolutely, which may remain after payment of debts and expenses of administration.

The widow of every person deceased testate, leaving no lineal descendant, for whom no provision is made in the will, or who shall waive such provision, is entitled, in addition to her dower, to one third of the real estate in fee, and one third of the personal estate absolutely, which may remain after payment of debts and expenses of administration.

PETITION FOR PARTITION of certain premises in the petition described, of which the petitioner claimed one undivided moiety, or half part. The parties agreed upon the following facts in the case, to wit:

That Thomas Tuttle, late of Lee, in said county, who died in October, 1851, at the time of his death was seized in fee of the premises. He died intestate, and left a widow, but no descendant. The widow, in February, 1852, duly made and executed her last will and testament, and therein, among other things, devised to John H. Robinson, the petitioner, "all her real estate wherever situate," which will was, in May, 1852, duly proved, approved, and allowed as the last will of the said Christiana Tuttle, the widow

aforesaid. No part of said premises had been sold, or was supposed to be needed or required for the payment of the debts of said Thomas Tuttle, or of those of the said widow.

The parties farther agreed, that, if upon the foregoing facts the court should be of opinion that the petitioner owned any part of the premises described in the petition, partition should be ordered, and a committee appointed to set out and assign to him such part of the premises as the court should be of opinion, upon the foregoing facts, that he owned.

*Christie & Kingman,* for the petitioner.

The rights of the petitioner in this case depend upon the construction of the 9th sec. of the 175th chap. of the Comp. Stat.

We contend that the widow of every deceased intestate, where there are no lineal descendants, is "entitled to *one half* of all the estate remaining," &c., "*in addition to her dower.*"

This is the exact language of the statute, and would give an estate in fee in one half of all the real estate which would pass by deed or devise, like any other property belonging to the widow.

The petitioner claims this one half of the real estate of Thomas Tuttle by devise from his widow; and insists that the language of the statute, and the uniform understanding and practice throughout the State, will give it to him. *Sparhawk* v. *Allen,* 21 N. H. (1 Foster) 19; *Mary Lund's Petition,* Sup. Court, December term, 1846, Hillsborough county—not reported.

*Albert R. Hatch,* for the petitionees.

The defendants claim that Christiana Tuttle had —

1. No more than a life estate in the lands which belonged to her late husband.

Robinson v. Tuttle.

The statute gives her "one half of all the estate remaining," &c., "in addition to her dower." Comp. Stat., chap. 175, sec. 9. In the dower, she had but an estate for life. The addition allowed by the statute in her case is "to her dower," *i. e.*, so as to give her a larger dower. It gives her in effect two thirds of the estate *as dower*. The statute has no word which indicates that she was to take a fee. And the statute is to be construed as a deed would be, containing only the same words of grant. 2 Blackstone's Com. 107.

The statute of descents provides for the transmission of property to heirs of the first taker, as effectually as if the word heirs were used. It in terms describes *hæres hæredis*, but it has no word which sends the widow's dower or share, under the statute in question, to her heirs.

That statute (Comp. Stat., chap. 176, sec 1) provides for the descent "of the *real* estate of every person deceased, not devised, subject to any right of dower or courtesy," without any further reference to the widow's share. In the distribution of personal property (sec. 6) the widow's share is first reserved, and the residue only divided. Chap. 176 is to be construed with chap. 175, as they were originally parts of the same statute. Rev. Stat., chaps. 165, 166. And, reading them together, the silence of chap. 176, in regard to any share of the widow in the real estate, except her dower, when compared with the express reservation of her rights in the personality, seems inconsistent with her taking any estate of inheritance under chap. 175, sec. 9.

The idea of enlarging the dower of the widow is not new. My Lord *Coke* says, that at common law the widow shall have but one third as dower, but by the custom of some counties she shall have half, and by the custom of some towns or boroughs she shall have the whole; "and in all these cases she shall be called tenant in dower." Co. Littleton, sec. 37.

2. Whatever estate she took in the rest of the land she

Robinson *v.* Tuttle.

hath but a life interest in her dower. And the statute expresses no intention to give her any thing in the reversion of her own dower. Nor does the reason of the statute call for any construction that will so dispose of the inheritance. If the widow had any fee in this estate, it is limited to one third. This seems to have been the view of the late Ch. Jus. *Gilchrist*, in *Sparhawk* v. *Allen*, 21 N. H. (1 Foster) 19.

The case of *Mary Lund*, (Hillsborough, Sup. Ct., Dec. T., 1846) which has been cited, does not bear upon this question. On petition of the widow herself, in that case, one half of the real estate was assigned to her, but no allusion was made to the question whether she took a fee or a life estate.

FOWLER, J. The single question raised by the arguments in this case is, whether the widow of a person deceased intestate, leaving no lineal descendant, is entitled, in addition to her dower, to a fee in one half the real estate of her deceased husband, remaining after the payment of debts and expenses of administration, or only to a life estate in such remaining half.

We are not aware that the decision of this question rests upon any thing except the construction to be given to the provisions of the ninth section of the one hundred and sixty-fifth chapter of the Revised Statutes. The language of that section is as follows:

" SEC. 9. If the deceased is intestate, and leaves no such lineal descendant, the widow shall be entitled to one half of all the estate remaining after the payment of the debts and expenses of administration, in addition to her dower."

The preceding section, relating to the same subject matter, intimately connected with and referred to in the foregoing, may properly be considered and construed with it. Its words are:

" SEC. 8. The widow of every person deceased, testate,

leaving no lineal descendant, shall be entitled, in addition to her dower, to one third part of all the estate remaining after the payment of the debts and the expenses of administration, if no provision is made for her by the will of the deceased, or if she shall waive such provision."

These two sections are mere transcripts, in an abbreviated form, of the first clause of the fifth section, and the whole of the sixth section of the act of December 24, 1840. The material portions of these sections are as follows :

" SEC. 5. *And be it further enacted,* That if any testator shall decease, leaving a widow upon whom no settlement has been made, and without any lineal descendant, such widow, if no provision is made for her by the will, or if she shall waive any provision which may be made for her therein, shall be entitled, in addition to her dower, to one third part of all the estate remaining after the payment of the debts and the expenses of administration," &c.

" SEC. 6. *And be it further enacted,* That if any intestate shall decease, leaving a widow upon whom no settlement has been made, and without any lineal descendant, such widow shall be entitled, in addition to her dower, to one half of all the estate remaining after the payment of the debts and expenses of administration," &c.   2 New-Hampshire Laws 490.

By the provisions of the common law and statutes in force at the time of the passage of the act of December 24, 1840, the widow of every person was entitled to dower in all the lands of which the husband died seized, or of which he had been seized at any time during coverture, provided they were in a state of cultivation, or had been used or kept as a wood or timber lot, and occupied as such in connection with some farm or tenement owned by the husband, to such allowance as the judge of probate might make her out of the inventory of the personal estate for her present support and comfort; and, if he died testate,

without any lineal descendant, she was farther entitled to one third, and if he died intestate, without such descendant, to one half of all the personal estate of her deceased husband remaining after satisfying the just demands with which the same was chargeable, as her distributive share thereof, in addition to her dower and allowance. 1 N. H. Laws, Ed. 1830, 352, 353, secs. 1 and 4; 342, sec. 28; 540, sec. 4.

What, then, is the fair and natural construction to be given to the provisions of the act of December 24, 1840, as reënacted in the eighth and ninth sections of the 165th chapter of the Revised Statutes? What provision for the widow of the childless testator or intestate, in addition to her dower and allowance, and the third or half of the personal estate as her distributive share — what additional share of the property of her deceased husband — did the legislature intend to give her in the one case and in the other? We confess that, so clear and explicit is the language of the act, so plain and obvious its meaning, and so apparent the intention of the legislature, we cannot entertain the slightest reasonable doubt what are the proper answers to these questions.

It is a well settled general rule in the construction of all statutes, that the natural import of the words used in any legislative enactment, according to the common use thereof when applied to the same subject matter, is to be considered as expressing the intention of the legislature, unless the intention so resulting from the ordinary import of the words be repugnant to the sound acknowledged principles of State policy, and to the clear and manifest design of the enactment. It is also proper to consider the whole of a statute, the provisions of the old law, other laws relating to the same subject matter, and the probable purpose of the legislature, in order to ascertain the meaning of any particular section, even when the words are unambiguous. The title and preamble, moreover, may

be resorted to, to aid in the interpretation of a statute. *Opinion of the Justices,* 7 Mass. 523 ; *Holbrook* v. *Holbrook,* 1 Pick. 248 ; *State* v. *Stephenson,* 2 Bailey 334 ; *Jackson* v. *Gilchrist,* 15 Johns. 89 ; *Clark* v. *Bynam,* 3 McCord 298 ; *Mendon* v. *Worcester,* 10 Pick. 235 ; *Com.* v. *Cambridge,* 20 Pick. 267.

A statute is not to be construed according to technical rules, unless such be the apparent meaning of the legislature. *Whitney* v. *Whitney,* 14 Mass. 88, 92 ; *Holbrook* v. *Holbrook,* 1 Pick. 248, 458 ; *Somerset* v. *Dighton,* 12 Mass. 385 ; *Barnstead* v. *Alton,* 32 N. H. 245.

We have alluded to the provisions of the old law, showing that prior to the passage of the act of December 24, 1840, the widow of a childless testator was entitled to one third, and the widow of a childless intestate was entitled to one half, of all the personal property of the deceased husband, remaining after the payment of debts and expenses of administration, as her distributive share thereof. The title of that act, so far as involved in the present case, is " *an act for the relief of widows,*" and that of chap. 165, of the Revised Statutes, " *of the widow's distributive share in the estate of her husband.*" In the first section of chap. 67, of the Revised Statutes, the share of the widow in her husband's estate, in addition to her dower, is spoken of in the same terms, and to be assigned in the same way as the shares of the heirs and devisees therein.

Looking, then, at the previously existing law, the titles to the two acts, the language of other statutes upon the same subject, and the obvious intention of the legislature, it seems quite clear that the word " *estate,*" in both sections of the statutes under consideration, is employed in its ordinary and popular sense of property, real, personal and mixed, and that the design of the legislature in enacting these statutes was, permanently to relieve the necessities and increase the property of widows, by giving to them, in addition to their dower and any allowance made by the judge

of probate for their present support and comfort, as their distributive share in fee and absolutely, in the estates of their deceased husbands, leaving no lineal descendants ; in case of testacy, one third part, and in case of intestacy, one half of all the property, real, personal and mixed, remaining to those estates after payment of debts and expenses of administration, instead of the third or half of the personal estate only thus remaining, to which they were entitled under previously existing laws. There is nothing in the phraseology of the act of 1840, or of its reënactment in the Revised Statutes, or in that of other laws relating to the same subject matter, tending, in our judgment, to show that the legislature could have intended to limit this additional provision for widows to their own lives, as contended by the counsel for the petitionees, and nothing in the natural and ordinary import of the language used, which would permit any such construction to be given to it.

The eighth section of the 165th chapter of the Revised Statutes, is, therefore, to be construed as giving to the widow of every person deceased, testate, leaving no lineal descendant, in addition to her dower, and any allowance for her present support, made by the judge of probate, one third of all the property, real, personal and mixed, remaining at the close of the administration upon the estate of her deceased husband, while the ninth section of the same chapter gives to the widow of every person deceased intestate, leaving no lineal descendant, one half of all such real, personal and mixed property, so remaining at the close of administration. Of the property thus remaining, the reversion of her own dower in the real estate of which the husband died seized, is a constituent part, so that the practical operation of this construction of the statute, is to give to the widow of any childless testator one third of the real estate assigned to her in dower, as well as one third of the remaining real estate in fee, and to the widow

of any childless intestate, one half the real estate assigned to her in dower, as well as one half the remaining real estate in fee. It is thus evident, that, in those cases where the personal property is sufficient to pay all charges against the estate, and one third of all the deceased husband's real estate is assigned in dower, the law gives to the widow of every testator, leaving no lineal descendant, including her dower, one third of all his real estate in fee, and two ninths thereof for life, and to the widow of every intestate leaving no such descendant, including her dower, one half of all the real estate of her husband in fee, and one sixth thereof for life; or, looking first at the life interest, to the widow of every such testator, five ninths of all the real estate for life, and one third in fee, and to the widow of every such intestate, six ninths of all the real estate for life, and one half thereof in fee.

It may be said that this construction of the statute gives to the widow a very large share of the husband's estate; and so it does; but to whom, in the absence of lineal descendants, could the law more properly award a liberal share of that estate, than to her whose labor and efforts, whose care and economy, in a great majority of cases, and whose funds, acquired by gift or inheritance, in many others, contributed so largely to its accumulation? But it is no part of our duty to commend or arraign the wisdom or policy of legislative enactments. It is sufficient to know that the construction we have given to the clauses of the statute under consideration, is the only one consistent with the natural import of the words used, according to the common acceptation of them, when applied to the same subject matter, considered with reference to the old law, other laws on the same subject, the obvious intention of the legislature, and the avowed purpose of the enactments, as gathered from the titles of the original act, and its revision in the Revised Statutes. It has been in force nearly seventeen years, and we understand its uni-

form construction, in the various counties, to have been such as we have now given to it. That, during all that period, it has neither been modified, nor, so far as we are informed, encountered any considerable efforts for its modification or repeal, affords quite conclusive evidence that we have mistaken neither the object and purpose of the legislature in its enactment, nor its proper construction.

Our views of the interpretation to be given to the language of those provisions of the statute under consideration, are fully sustained by the remarks of this court in *Norris* v. *Moulton*, 34 N. H. 392, and by the decision of the Superior Court at the December term, 1846, for Hillsborough county, in the unreported case of *Mary Lund's Petition for Partition*, with a manuscript copy of which we have been furnished by the counsel for the petitionees. It is true, it does not distinctly appear from the latter case, as reported, whether the petition did or did not describe the reversion of the widow's dower, but the petitioner claimed to *own* one half of whatever was described, in her own right in common with other, and the court sustained her claim and ordered partition, as prayed for. The opinion of the late Chief Justice *Gilchrist*, as reported, is extremely brief, and not so definite in some respects as might be desirable ; yet we think the necessary inference, from its language, clearly is, that the petitioner, as the widow of her late husband, was entitled to hold one half the described premises, in her own right absolutely, in fee simple.

In arriving at our conclusion as to the proper construction to be given to the 8th and 9th sections of chap. 165 of the Revised Statutes, we have not overlooked the opinion of the court in *Sparhawk* v. *Allen*, 21 N. H. (1 Foster) 9, where the late Chief Justice *Gilchrist* is assumed, by the counsel for the petitionees, in his argument, to have regarded the widow as entitled to only one third of the residue of the real estate remaining after the assignment

of dower, excluding the reversion from such residue. An examination of the reported case does not show that this particular question was considered by the court, or was at all material to their decision of the questions before them; and there is nothing in the language of the court contradicting the idea that in their judgment the widow was entitled to the fee in one third of the reversion of her own dower, as well as in one third of the residue of the real estate not assigned for dower. It is true, the value of the dower is deducted from the whole value of the land, and one third of the balance taken as the value of the widow's third in fee, but this could hardly have been for any other purpose than illustration — inasmuch as the value of the dower is taken to be one third the value of the whole land in fee, which is manifestly incorrect. The language of the court, too, that after the assignment of dower, the widow was entitled to " one third of the residue in fee;" 21 N. H. (1 Foster) 20; accords precisely with the construction we have given to the statute, unless it can be shown that the reversion of the whole dower did not remain, was not part of the " residue" of the husband's estate, after the assignment of dower. On the whole, therefore, as we understand them, the decisions in *Sparhawk* v. *Allen*, and in *Mary Lund's Petition for Partition*, are in strict accordance with our own views of the statute under consideration, and with the construction uniformly given to it by the various probate courts in the State since its enactment.

As, in our opinion, under the circumstances found in the case agreed by the parties, upon the death of Thomas Tuttle, intestate, leaving no lineal descendant, in October, 1851, his widow became seized in fee, as tenant in common with his heirs-at-law, of an undivided half of all his real estate, her interest in that real estate passed by her will to the petitioner, and he is therefore entitled to partition, according to the prayer of his petition.

*Partition ordered.*