Wilde, J.,
delivered the opinion of the Court. The only question referred, to the consideration of the Court, upon * the facts agreed in this case, is, whether the pauper, [ * 384 | for the expense of whose support the action is brought, had or had not her legal settlement in the town of Dighton, at the time when such expense was incurred ; the reasonableness of the charges, and due notice to the defendants, being agreed.
It appears that the pauper was an illegitimate child, and born in the town of Dighton, where her mother had her settlement in the year 1747; and she thereby, as the law then was, gained a settlement in that town, which must continue, unless she has since gained a new settlement in some other town or district wi.thin the Common wealth.†
The counsel for the defendants contend that she has gained such new settlement in the town of Swansey, either by virtue of the statute of 1789, c. 14, or of the provincial act of 4 Will. & Mar. c. 13. And they seem to rely principally upon the operation of the former statute, by a paragraph in the first section of which it was enacted, “ that all persons, citizens of this Commonwealth, who, before the 10th day of April, 1767, Resided or dwelt within any town or district in the then province of the Massachusetts Bay for the space of one year, not having been warned to depart therefrom according to law, shall be deemed and be taken to be inhabitants of the same town or district, to every intent and purpose whatever.”
It is agreed, in the case at bar, that the pauper, when about eleven years old, removed into that part of Swansey which is now Somerset, and has there ever since remained, not having been warnedoto depart therefrom until the year 1794. So that, by a literal construction of the above paragraph, the pauper, although a minor, must be considered as having gained a settlement in Swansey, she having resided there more than a year previous to that time.
But, in the exposition of statutes, such a construction should be given as will best effectuate the intention of the makers. In some cases, the letter of a statute may be restrained by an equitable construction ; in others, enlarged ; and, in others, the construction may be even contrary to the letter. For a case may be within the letter, and not within * the meaning of a statute.(1) [ *385] To discover the true meaning of a statute in a doubtful case, the cause of making it is to be regarded; and other statutes relating to the same subject may be taken into consideration.(2)
*336 The intention of the legislature, in the paragraph under consideration, appears to have been to promulgate, in the most effectual manner, the substance of the statutes in force, on this subject, in the year 1767, and previous ; and not to establish a new rule, and to give it a retrospective operation, thereby taking away the vested rights, or changing the relative obligations, of the towns and districts to which it might have relation. If the legislature had the power to give it such an operation, a question which it is unnecessary now to decide, we cannot suppose they so intended, unless that intention has been manifested by the most clear and unequivocal expressions.(3) For it must be admitted, that all retrospective laws are repugnant to the principles of sound legislation, and the permanent security of rights.
But we discover no variance, in substance, between the act of 4 W. & M., taken in connexion with the 12 & 13 Will. 3, c. 10., and the paragraph in question of the statute of 1789', except that in the former there is a proviso, that it shall not extend to any persons coming or being sent to any town for nursing, education, &c. A similar proviso is to be found in the law of 1789, which may not, however, admit of a construction, giving it any operation, except prospectively. The act of 4 W. & M. has never been construed to extend to minors living with their parents, and we cannot think it will admit of such a construction. That act authorizes the removal of persons duly warned, and not departing the town within a limited time. And we can never presume it to have been the intention of the legislature to remove infant children from the custody and protection of their parents.
In the case of Shirley vs. Watertown,(4) it was decided, that a wife and minor child could have no settlement separate from the husband and father. That was an action for the [*386] * support of Sarah White and Lucy, her daughter ; who, it appeared, had lived in the town of Newton more than a year previous to 1767, with William, the husband of Sarah, Lucy being then a minor. As the warning of William was, in that case, deemed sufficient to prevent the acquiring of a settlement in Newton, it was adjudged that Sarah and Lucy gained no settlement there, although they were not legally warned to depart. The statute of 1789 is not mentioned in the report of that case ; but it was as applicable to that as it is to the present case ; and the decision is obviously opposed to the construction now contended for by the defendants’s counsel.
In the.case of Winchendon vs. Hatfield,(5) it was determined, that slaves were not within the ninth and tenth sections of the act of 4 *337 W. & M., or the act of 12 & 13 Will. 3, making the warning out of persons within the year necessary to prevent the acquiring of a settlement. And it is there said, that, “ in this respect, the condition of a slave resembled the connexion of a wife with her husband, and of infant children with their father. He is obliged to maintain them, and they cannot be separated from him. Thus their settlement is derived from the husband and father.”
We therefore consider the construction of the act of 4 W. & M. as having been judicially settled ; and we can perceive no reason for giving a different one to the paragraph in question of the statute of 1789. This construction is not inconsistent with that given to an other paragraph of the same section, in the case of Granby vs. Amherst,(6) cited by the defendant’s counsel; wherein it was decided, that the occupancy of a freehold by the owner, although a minor, for two years, would give a settlement. In such case, the minor could not be lawfully removed from his freehold ; and, although warned to depart, might rightfully continue his occupancy.
But it is contended by the counsel for the defendants, that the pauper was emancipated from her mother, when she removed to Swansey ; and that then she might well gain a settlement *in her own right. The facts, however, in the case, will [* 387] not support this position. Emancipation is not to be presumed ; and there is nothing in the case, which can be considered as establishing the fact. Whether the pauper was placed by the mother in Swansey for education or in service, or was abandoned by her, does not appear.
One point more, only, remains to be considered. It has been ar gued, that an illegitimate child, in legal contemplation, is generally considered as having no relative ; that such a child could not have a derivative settlement as legitimate children, and might, therefore, at any age, as well gain a settlement in his own right, as a legitimate child when emancipated.
In the case of Wright vs. Wright,(7) cited by the counsel for the plaintiffs, it was decided, that the mother of an illegitimate child has, by law, a right to the custody and control of him; and is bound to maintain him. The mother, being bound to maintain him, is entitled to all his services ; and he ought not to be separated from her, while a minor, without her consent.†
We are, therefore, of opinion, that the ninth and tenth sections of the act of 4 W. & M., and the first part of the first section of the statute of 1789, extend only to such persons as were subject to *338 warning and removal, and who were competent to gain a settlement by residence when not warned.
Upon the whole, we are well satisfied that the legal settlement of the pauper is in the town of Dighton, and, according to the agreement of the parties, the plaintiffs are entitled to judgment in their favor.

Defendants defaulted.

 Whitechapel vs. Stepney, Carth. 433. — Rex vs. Spitalfields, 1 Ld. R. 567. — Rex vs. St. Peter’s in Worcestershire, Bur. S. C. 25. — Bott. by Const. & Pratt, not. 2. c. 1.

 Bac. Abr., Tit. Statute, 1. — Eyston vs. Studd, 5 Plowd. 467.

 Bac. Abr., Statute. 1 3

 7 Dush vs. Vancleeck, 7 Johns. 477.

 3 Mass. Rep. 322.

 4 Mass. Rep. 123.

7-10"> 7 Mass. Rep. 1.

 2 Mass. Rep. 109.

 Petersham vs. Dana, post, 429. —Freeto vs. Brown, 4 Mass. Rep. 675.