## GRAY v. DALY.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

1. MUTUAL ACCIDENT ASSOCIATION—RESIGNATION OF MEMBER.

Under the articles of a mutual accident association, providing that members may at any time resign, thereby relinquishing all rights, provided that all dues and assessments shall have been paid at the date of the resignation, where a membership terminates in any manner the rights and

liabilities of the member are the same as if the termination were by resignation.

**2. SAME—LIABILITY FOR ASSESSMENTS.**

Under articles of a mutual accident association, providing that members of the association could resign at any time, thereby relinquishing all claims against the association, provided that all dues and assessments shall have been paid, a member who had paid all dues and assessments levied on him up to the time of his resignation, was not subject to further assessments, though the liability for which the assessments were made accrued while defendant was still a member.

Submission of controversy, on agreed statement of facts, between Henry Winthrop Gray, receiver of the United States Mutual Accident Association of the City of New York, and David N. Daly. Judgment for defendant.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles F. Brown (Sumner B. Stiles, on the brief), for plaintiff.

James A. Douglas and Raphael J. Moses, for defendant.

C. R. & C. U. Carruth, for other policy holders.

CULLEN, J. The United States Mutual Accident Association of the City of New York was an assessment accident insurance company, organized under chapter 175 of the Laws of 1883 of this state, and transacting business under chapter 690 of the Laws of 1892. On the 26th day of June, 1895, the corporation was dissolved by judgment of the supreme court, and the plaintiff appointed permanent receiver thereof. The defendant, Daly, was a member of the association continuously from the 22d day of May, 1894, to and including the 22d day of February, 1895. During said period valid claims accrued against the association, of which there remains unpaid the sum of $193,461.53. Daly's share of such liability, in proportion to the whole amount of insurance remaining unpaid on the dissolution of the association, would be $4.68. On June 10, 1896, an order was made by the supreme court authorizing the plaintiff, as receiver, to levy an assessment upon Daly for said last-named amount, and ratably upon the other members of the association. The controversy submitted is as to the right of the plaintiff to recover of Daly the amount of the assessment imposed on him under the facts above stated, and the insurance certificate and by-laws of the corporation, and the application of the member, which are made part of the submitted case.

Whether an action will lie against members of a benefit association to recover the amount of assessments levied upon them, in the absence of an express agreement to that effect, is in doubt. The weight of authority outside of this state is that payment by the members is optional, the sole penalty for a failure to pay being forfeiture of the membership. In re Protection Life Ins. Co., 9 Biss. 188, Fed. Cas. No. 11,444; Association v. Hunt, 127 Ill. 257, 20 N. E. 55; Farmer v. State, 69 Tex. 561, 7 S. W. 220. In the supreme court of this state the weight of authority is the other way (McDonald v. Ross-Lewin, 29 Hun, 87; In re Globe Mut. Ben. Ass'n, 63 Hun, 263, 17 N. Y. Supp. 852; Smith v. Bown, 75 Hun, 231, 27 N. Y. Supp. 11), though the

question is an open one in the court of appeals (In re Globe Mut. Ben. Ass'n, 135 N. Y. 280, 32 N. E. 122). In every case the question depends on the constitution, by-laws, and certificate of the association, which constitute the contract between the parties (People v. Grand Lodge, Empire Order of Mut. Aid, 156 N. Y. 533, 51 N. E. 299), and the contracts of different associations vary in their terms. Therefore the decision as to the liability of the members of one association may not be authority on the same question when it arises with respect to another association. However, without attempting to differentiate the several cases, and without expressing any view of our own on the question, we shall assume, in accordance with the decisions of this court to which we have referred, that there was an implied contract on the part of the defendant to pay the association all assessments which might be imposed upon him during the term of his membership, and that for such assessments an action against him would lie. But, whatever may be the implied obligation on the part of the members to the corporation, that liability must be limited by the express provisions of the by-laws. Section 10, art. 2, provides:

"Members of this association may at any time resign, thereby relinquishing all claims upon, or privileges under, said association: provided, however, that all dues and assessments shall have been paid to the date of the resignation."

The agreed statement of facts does not show how the membership of the defendant was terminated on the 22d day of February, 1895,—whether by resignation or otherwise. We do not deem the omission material, as we think the rights and liabilities of a member whose membership is terminated in any manner must be the same as if that termination were by resignation. If the manner in which the defendant ceased to be a member has any bearing on the question of his liability, we must make the assumption most favorable to the defendant. By the by-law referred to, it is seen that the member had the absolute right to resign his membership, provided he paid all dues and assessments levied up to that time. There is no claim here that the assessment for which a recovery is sought was imposed before the defendant ceased to be a member. Therefore, so far as we can see, he has discharged all of his liability to the association. The learned counsel for the plaintiff insists that the liability for which the assessments were made accrued while the defendant was still a member. This is true; but the condition on which the defendant had the right to resign was not the discharge of any share of the liabilities of the association, but the payment of any assessment that might be levied by the directors. It is contended that this is an unreasonable construction of the by-law, because it is said that the only method of discharging the liabilities of the association was by assessment upon its members. This is not the fact, or, if true, is true only in a qualified sense. Under the terms of the certificate issued to the defendant, he was required to pay the sum of six dollars quarterly in advance as a condition for the continuance of his membership. The association saw fit to adopt a nomenclature of its own by which "assessments" and "premium calls" are made interchangeable terms, and the regular advance payment is at times called an "assessment"; and the special assessments which the directors were empowered to levy

in case of the funds on hand being insufficient to discharge the lia-
bilities of the association are at times termed "premium calls." This
confusion of terms makes it difficult (for me, at least) to ascertain the
exact intention or purport of some parts of the by-laws. Still we
think it is apparent that the general plan was to issue policies in con-
sideration of the payment of regular premiums, the same as is done
by other companies, and, in case of the premiums being insufficient
to pay the expenses and losses of the business, then, and then only,
to levy special assessments for the deficiency. Thus, primarily, the
fund for the payment of losses or other liabilities was to proceed from
the premiums, and not from the assessments. Further, any other
construction of this provision of the by-law than that which we have
given would be extremely inconvenient, if not impracticable, of appli-
cation. In this case the assessment against the defendant has been
made more than two years after he ceased to be a member. Part of
the liabilities of the association for which the assessment in 1896 was
made (not against this defendant, but against others) accrued as far
back as 1890. If the obligation of the member is to be measured,
not by the assessments imposed during the term of his membership,
but by the liabilities of the association which may accrue during that
time, he cannot know when he resigns what sums he must pay as
a condition of resignation. In case an assessment is levied two
years after his resignation, and he fails to pay the assessment, would
such failure render his previous resignation ineffective? In case of
the death of, or an accident to, a member, whereby an indemnity ac-
crues to him, is his share of the liabilities of the association for which
no assessment has been levied to be deducted from the amount pay-
able to him or to his beneficiary, or is he or his estate obliged to pay
assessments that may be subsequently levied on account of such lia-
bilities? We think no scheme would work practically which did not
restrict the obligation of the member to the payment of such sums
only as may have been actually assessed against him during his mem-
bership.

In Re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 30 N. E.
114, it was held that an assessment made by a receiver of a mutual
assessment association was invalid, and that no obligation rested on
the members of the association to pay it. That case can be distin-
guished, in its facts, from the one before us; but the principle of the
decision seems to us closely approximate, at least, to that involved
in the present one. There the question was as to the right of mem-
bers who have not paid the assessment levied by the receiver to share
in the reserve fund. While the dispute was over the reserve fund,
it appeared by the case that the assets of the association were insuffi-
cient to pay the death claims. We think a decision that the nonpay-
ing members were not in default as to the reserve fund necessarily
involved the proposition that they were not in default as to the cred-
itors of the association. There is another distinction between the
two cases: In the case cited the amount of the assessment the di-
rectors were authorized to impose in any two months was limited to
a specified sum, and, until the time of the proceedings against the
association, assessments had been imposed up to the full limit. In

the present case there was no prescribed limit to the assessments. But in the case cited there would have rested on the company, in case no proceedings had been taken against it, the obligation to levy the assessment every two months until its debts were discharged. The liabilities of the members of that association were of the same character, though not as great in degree, as those of the association whose receiver is now before us. If the institution of the legal proceedings and the appointment of the receiver relieved the members from further liability in one case, we think it should produce the same effect in the other. We are therefore of opinion that the defendant, having paid all premiums and assessments levied upon him up to the time of his resignation, was not subject to further liability.

There should be judgment for the defendant on the submitted case, with costs. All concur.

